UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIAM FALS-STEWART, PH.D.,                    07-CV-0225E(Sr)
                Plaintiff,

    -vs-
                                                  MEMORANDUM

GERARD CONNORS, PH.D., Individually and in
  His Official Capacity,                         and
KIMBERLY WALITZER, PH.D., Individually and
  in Her Official Capacity,                     ORDER[1]
SATISH TRIPATHI, PH.D., Individually and in
  His Official Capacity,
JORGE V. JOSE, PH.D., Individually and in His
  Official Capacity,
JOSEPH CUSKER, Individually and in His Official
  Capacity,
MARK D. KRISTAL, Individually and in His
  Official Capacity,
ALAN HUTSON, PH.D., in His Official Capacity,
RUSS NISENGARD, PH.D., in His Official
  Capacity, and
SUZANNE LAYCHOCK, PH.D., in Her Official
  Capacity,
                Defendants.

---

The undersigned referred this case on April 6, 2007 to Magistrate Judge H. Kenneth Schroeder, Jr. pursuant to 28 U.S.C. §636(b)(1)(A) and (B) for an expedited hearing and report upon plaintiff's application for a preliminary injunction. (Dkt. #28).  On April 27, 2007, Judge Schroeder issued a Report and Recommendation ("R&R") in which he recommended that plaintiff's motion for a preliminary injunction be denied.  (Dkt. #25).  For the reasons that follow, the

---

[1]This decision may be cited in whole or in any part.

R&R will be adopted in its entirety and plaintiff's motion for a preliminary injunction will be denied.

BACKGROUND

This action arises out of an investigation into alleged improprieties of the plaintiff in his conduct as a research scientist operating under federal grants. Plaintiff, William Fals-Stewart, Ph.D., previously served as a senior research scientist at the Research Institute on Addictions at the University at Buffalo ("RIA"). During this time, plaintiff was the principal investigator for five research projects funded by grants from agencies within the National Institutes of Health ("NIH"), a department of the U.S. Department of Health and Human Services ("HHS").

In the summer of 2004, two research scientists at RIA raised their concerns with the University about discrepancies between the number of subjects reported by plaintiff in NIH Progress Reports and actual payments to study participants. In response to these allegations, the University assembled a panel to conduct an inquiry into the allegations and informed the plaintiff of this on September 28, 2004.

In conducting an investigation into alleged misconduct in biomedical or behavioral research, the University follows an administrative process consistent with regulations promulgated by the HHS Office of Research Integrity ("ORI") and

set forth at 42 C.F.R. §93.300 *et seq.*[2]  First, the University forms an Inquiry Panel to determine whether a formal investigation is warranted.  (§93.307).  If the Inquiry Panel determines an investigation is warranted, it informs the respondent (§93.308) and an Investigation Panel conducts the investigation in accordance with §93.310.  The Investigation Panel then reports on the allegations to the University's Vice President for Research, who makes a recommendation to the Provost, which can be appealed to the University President. (§§93.313-93.314). After the University makes its findings, it forwards them to ORI. (§93.315).

The respondent may then challenge the University's findings through a multilevel external review process.  ORI may either accept the institutional findings or make its own findings and propose administrative actions (§§93.403-93.414) and the plaintiff can challenge ORI's findings both internally and, if necessary, through a hearing before an Administrative Law Judge applying a *de novo* review standard. (§§93.500-93.523). The hearing process includes rights to conduct discovery, file motions, present oral argument, and submit post-hearing briefs. (§§93.505-93.513).  The ALJ's ruling is a recommendation to the Assistant Secretary of Health who can accept or reject it.  The Assistant Secretary of Health's determination is a final agency action subject to further review.

---

[2]The University's administrative process is described in detail at http://www.research.buffalo.edu/policies/rescond.cfm.

In the present case, the plaintiff has moved for a preliminary injunction to enjoin the University from conducting its investigation into the plaintiff's alleged scientific misconduct.   The plaintiff alleges that the University defendants conducting the investigation have failed to properly sequester relevant documents, the Investigation Panel initially included members with a conflict of interest, and the defendants have failed to preserve the confidentiality of the misconduct proceeding.

## DISCUSSION

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter."  *Patton* v. *Dole*, 806 F.2d 24, 28 (2d Cir. 1986).  The court will grant a preliminary injunction to a party seeking to challenge government action taken in the public interest pursuant to a statutory or regulatory scheme only where the moving party can "demonstrate irreparable harm and a likelihood of success on the merits."  *Jolly* v. *Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996); *Able* v. *United States*, 44 F.3d 128, 131 (2d Cir.1995) (per curiam).

To establish "irreparable harm," the movant must "demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of money damages."  *Rodriguez* v. *DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999).  It is clear, however, that the alleged violation of a

constitutional right triggers a finding of irreparable harm.  *See Jolly*, 76 F.3d at

482. Thus, this Court will address the plaintiff's argument that the University's

investigation is violating his constitutional right to due process.

With regards to the R&R, the Court "may accept, reject, or modify, in whole

or in part, the findings or recommendations made by the magistrate" and may

adopt those parts of the R&R to which no specific objection is raised, so long as

such are not clearly erroneous. 28 U.S.C. §636(b)(1)(C); *see also Black* v. *Walker*,

2000 WL 461106, at *1 (W.D.N.Y. 2000).  The undersigned's careful review of the

magistrate judge's analysis reveals no such error with respect to those portions

of the R&R to which no specific objection was raised.

The undersigned must make a *de novo* determination with respect to those

portions of the R&R to which specific objection has been made. 28 U.S.C.

§636(b)(1)(C); *United States* v. *Raddatz*, 447 U.S. 667, 675-76 (1980); *Sieteski* v.

*Kuhlmann*, 2000 WL 744112, at *1 (W.D.N.Y. 2000). Objections to an R&R must

satisfy Local Rule of Civil Procedure 72.3(a)(3), which states that:

"[t]he written objections shall specifically identify the portions of the
proposed findings and recommendations to which objection is made
and the basis for such objection and shall be supported by legal
authority."

The plaintiff puts forth two specific written objections to Judge Schroeder's

R&R recommending denial of plaintiff's motion for preliminary injunction:[3]

1.  The Defendants' recent "stigmatizing disclosures" have
    interfered with Plaintiff's federally protected property interest
    in research grants awarded by federal agencies;

2.  The University's failure and refusal to sequester relevant
    documents has deprived the Plaintiff of [his] federally
    protected right to procedural due process in the misconduct
    investigation.

### Plaintiff's First Objection

Injury to an individual's reputation inflicted by a government officer and the

"deleterious effects" which flow from a damaged reputation are normally

insufficient to establish a violation of due process claim. *See Paul* v. *Davis*, 424 U.S.

693, 709-10 (1976); *Valmonte* v. *Bane*, 18 F.3d 992, 1001 (2d Cir. 1994). To establish

a constitutional due process violation, plaintiffs must demonstrate "stigma plus"

by showing "(1)the utterance of a statement sufficiently derogatory to injure his

or her reputation, that is capable of being proved false, and that he or she claims

is false, and (2) a material state-imposed burden or state-imposed alteration of the

plaintiff's status or rights." *Sadallah* v. *City of Utica*, 383 F.3d 34,38 (2d Cir.

2004)(internal quotations omitted).  "Burdens that can satisfy the 'plus' prong

---

[3]The plaintiff's third objection–that Judge Schroeder did not rule on Plaintiff's request to be allowed to have assistance of counsel during the misconduct hearings–has subsequently been resolved and is therefore moot. See Docket #34.

under this doctrine include the deprivation of a plaintiff's property and the termination of a plaintiff's government employment." *Id.* (Internal citations omitted).

In the present case, the plaintiff has failed to establish an actual and imminent harm falling within the "stigma plus" test.  While the plaintiff maintains that delays in the transfer of federal funds from his most recent non-party employer to his current non-party employer are the result of disclosures by the University's Investigatory Panel, the plaintiff presents no evidence that the delays are a result of disclosures and plaintiff describes no specific disclosures causing such delays. Instead, the plaintiff categorizes the transfer as "inexplicably delayed" and suggests the delay "appears to be" a result of improper disclosures by the Investigatory Panel.  Such speculation cannot be categorized as irreparable harm. *See Rodriguez*, 175 F.3d at 234; *see also Needleman* v. *Healy*, 1996 WL 33491149, at *5 (W.D. Pa. 1996)(explaining that plaintiff, a professor being investigated for scientific misconduct, could not prove a due process violation because he could not show any actual instances of harm from the injury to his reputation nor could he show that the allegedly stigmatizing information was disseminated by his governmental employer).

Plaintiff's reliance on *Mertik* v. *Blalock* is also unavailing. Plaintiff cites to *Mertik* for the proposition that, "[w]here a plaintiff alleges the loss, infringement

- 7 -

or denial of a government right or benefit previously enjoyed by him, coupled with

communications by government officials having a stigmatizing effect, a claim for

deprivation of liberty without due process will lie."  983 F.2d 1353, 1362 (6th Cir.

1993).  While the Sixth Circuit did recognize the possibility of a due process claim

in some circumstances, its *Mertik* opinion also explained that the scope of

protected liberty interests is quite narrow. *Id.*  Most importantly, the Sixth Circuit

noted that any loss arising from a deprivation of due process "must occur at the

same time as the claimed stigmatizing publication."  *Id.* At 1363.  Thus, even

assuming, *arguendo*, that the delay in the transfer of funds to the plaintiff is a loss,[4]

plaintiff's due process claim would still fail because he has not shown a

contemporaneous dissemination of stigmatizing information by government

employees.

Plaintiff's Second Objection

As Judge Schroeder correctly noted, plaintiff has no constitutional right not

to be investigated for his alleged improprieties.  *Popovic*, 997 F. Supp. at 678.

Contrary to plaintiff's assertions, the due process clause does not apply to the

current administrative investigation because "an administrative investigation

adjudicates no legal rights."  *SEC* v. *O'Brien*, 467 U.S. 735, 742 (1984); *see also*

---

[4]In a similar case, one federal district court has held that the loss of research funds is not a deprivation of any constitutionally recognized property interest. *See Needleman*, 1996 WL 33491149, at *4 ("plaintiff has no constitutionally protected property interested in continuing to serve as principal investigator on his research grants ***.").

- 8 -

*Popovic* v. *United States*, 997 F. Supp. 672, 678 (D. Md. 1998)("to the extent that a government agency is performing an investigative as opposed to adjudicative function, it is not affecting legal rights and an individual is not entitled to the protections usually associated with the judicial process.").

While plaintiff's allegations that the University Panel has failed to sequester documents and maintain confidentiality, if true, might establish that the University's Investigatory Panel has failed to fully comply with ORI regulations governing investigations, *see* 42 C.F.R. §93.300 *et seq*, the remedy for such a violation is not an injunction from this Court.  In fact, where, as here, "a statute routes the initial adjudication of a claim through an administrative agency, a district court is without jurisdiction to hear the claim until administrative review is complete."  *McHugh* v. *Rubin*, 220 F.3d 53, 59 (2d Cir. 2000)(*citing Shalala* v. *Ill. Council on Long Term Care*, 529 U.S. 1 (2000)).

If the plaintiff is not satisfied with the outcome of the University's investigation, he has multiple opportunities to raise his procedural concerns throughout the administrative process.  He can make the procedural claims raised here on appeal to the President of the University, and if an adverse finding is forwarded to ORI, he can raise these arguments with ORI and to the ALJ, and if still unsatisfied, to a court on judicial review after the administrative process is complete. While such a lengthy administrative process may cause the plaintiff

delay-related hardship, this Court cannot intervene by pre-maturely substituting

its own judgment before the administrative process is complete.

Accordingly, it is hereby **ORDERED** that Judge Schroeder's R&R filed on

April 27, 2007 (Dkt. # 25) is adopted in its entirety and that plaintiff's motion for

a preliminary injunction is denied.

DATED:      Buffalo, N.Y.

August 24, 2007

                                          */s/ John T. Elfvin*
                                          JOHN T. ELFVIN
                                          S.U.S.D.J.